## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLAINE PARFAIT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-2152** |
| **SWIFTSHIPS, LLC** | **SECTION: D (3)** |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by defendant, Swiftships, LLC ("Swiftships").[1]  Plaintiff, Blaine Parfait, opposes the Motion,[2] and Swiftships has filed a Reply.[3]

After careful review of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This is a maritime personal injury case.  Parfait alleges that he was injured on or about November 20, 2020, while working aboard a vessel during his employment with Coating Services, Inc. as a painter/foreman.[4]  Parfait asserts that he was below deck inspecting the paint job performed on the piping installed on the LCU 2026, a vessel docked at the shipyard owned and operated by Swiftships in Amelia, Louisiana, along the navigable waters of the Avoca Island Cutoff.[5]  Parfait alleges that during his inspection, and unbeknownst to him, an employee of Swiftships opened a hatch in the deck that leads to the bilge and left the hatch open without

---

[1] R. Doc. 51.
[2] R. Doc. 64.
[3] R. Doc. 70.
[4] R. Doc. 1 at ¶ 4.
[5] *Id*. at ¶ 5.

providing any warnings of the open hatch or placing barricades around it to prevent someone from falling into the hatch.[6]   Parfait alleges that as he conducted his inspection, he stepped into and fell through the unguarded, open hatch, striking his neck as he fell into the bilge below.[7]   Parfait filed a Complaint in this Court against Swiftships on November 19, 2021, alleging that his injuries and damages were caused by the negligence and/or fault of Swiftships for, among other things, failing to warn of the open hatch.[8]

On March 15, 2022, the Court allowed the Louisiana Workers' Compensation Corporation ("LWCC") to intervene in this matter pursuant to Fed. R. Civ. P. 24(a)(2).[9]   On March 16, 2022, the Court allowed Swiftships to file a third-party complaint against Parfait's employer, Coating Services, Inc.[10]

Swiftships filed the instant Motion for Summary Judgment on October 16, 2023, asserting that Parfait cannot establish one of the elements of his maritime negligence claim, namely that Swiftships owed a duty to warn him of the open hatch into which he fell.[11]   Comparing the duty it owed to Parfait to the duty owed by vessel owners to injured longshoremen, Swiftships argues that the open hatch was an open and obvious condition to an experienced worker like Parfait and, therefore, Swiftships had no duty to warn Parfait of the condition.[12]   Swiftships relies primarily upon Parfait's deposition testimony, during which he stated that he has been in the

[6] *Id.* at ¶¶ 6-7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.
[9] R. Docs. 15, 17, & 19.
[10] R. Docs. 16, 18, & 20.
[11] R. Doc. 51; R. Doc. 51-1.
[12] R. Doc. 51-1 at pp. 12-23.

industry of blasting/painting for over twenty years, he has participated in safety meetings on an almost daily basis, he knew there were hatch covers on the vessel that would be open from time to time, and he performed a pre-inspection of the work area where he fell, during which he saw Erik Guillory, a Swiftships employee, working inside one of the two hatches in the room.[13]  Parfait further testified that as he was walking straight ahead, he saw Guillory a couple of feet away from him shortly before he fell into the open hatch.[14]  Swiftships emphasizes that Parfait testified that he had visual contact with, and a direct line of sight to, Guillory just before he fell, and stated that the lighting in the space was not an issue.[15]

Based upon Parfait's extensive experience working aboard vessels, including his knowledge and awareness that the vessel he had been working on for six straight months had hatches on the deck, and his admission that he saw Guillory working in one of the hatches during his pre-inspection on the day of the accident and right before he fell, Swiftships argues that it had no duty to warn Parfait of the dangers associated with open hatches in the vicinity of where Parfait was working that day.[16] As such, Swiftships asserts that Parfait cannot prove all the elements of his maritime negligence claim, and that it is entitled to summary judgment as a matter of law.[17]

Parfait argues that the Motion for Summary Judgment should be denied because a genuine issue of material fact exists regarding whether the open hatch was

---

[13] *Id*. at pp. 13-16 & 17-18 (*quoting* R. Doc. 51-2 at pp. 61-68).
[14] R. Doc. 51-1 at p. 18 (*quoting* R. Doc. 51-2 at p. 68).
[15] R. Doc. 51-1 at pp. 19-21 (*quoting* R. Doc. 51-2 at pp. 69-72 & 73-74).
[16] R. Doc. 51-1 at p. 23.
[17] *Id*. at pp. 23-24.

an open and obvious condition absolving Swiftships from liability.[18]  Parfait contends that the facts about exactly where Guillory was located are in dispute, and that Guillory testified that the positioning of his body within the hatch would have obstructed Parfait's view and prevented Parfait from seeing that the hatch into which he fell was uncovered.[19]  Parfait claims that, despite having both hatches open and sitting in a position that may have blocked someone's view of those open hatches, Guillory did not flag or otherwise provide any warnings as to the hazards presented by the open hatches.[20]  Parfait alleges that as he approached the area where Guillory was working, he attempted to pass Guillory, who was sitting on the edge of the open hatch on the right, and he fell into the open hatch on the left.[21]  Parfait asserts that Coating Services, Inc. conducted a post-accident investigation and concluded that a root cause of the accident was Guillory's failure to properly flag the open hatches, which would have made them more visible to passersby.[22]  Parfait argues that Guillory's testimony that Guillory's positioning obstructed Parfait's view of the open hatch, combined with his own testimony that he saw Guillory as he approached the area but that he was unable to see that the other hatch was open—the one he eventually fell into—establishes a genuine issue of material fact as to whether the open hatch presented an open and obvious hazard.[23]

---

[18] R. Doc. 64 at p. 10.
[19] *Id*. at pp. 4 & 11 (*citing* R. Doc. 64-2 at pp. 12-13).
[20] R. Doc. 64 at p. 4 (*citing* R. Doc. 64-2 at pp. 16-17).
[21] R. Doc. 64 at pp. 4 & 11 (*citing* R. Doc. 64-3 at pp. 7-8, 11, 12, 13, 14-16, 17; R. Doc. 64-2 at pp. 2-3).
[22] R. Doc. 64 at p. 5 (*citing* R. Doc. 64-5).
[23] R. Doc. 64 at p. 13.  Parfait further asserts that the Motion should be denied because Swiftships maintained active control of the area where the accident occurred (through Guillory), and maritime law provides that the obviousness of the hazard does not absolve a party of its duty of reasonable care when the hazard is due to conditions created in areas under the active control of the defendant.  R.

In response, Swiftships maintains that Parfait cannot prove that Swiftships had a duty to warn him of the open hatch because the condition was open and obvious.[24]  Swiftships asserts that the testimony of people who were not witnesses to the accident, including Coating Services, Inc. employee Fernando Cruz Pravia, and Leslie Austin, who prepared the post-accident investigation report, cannot create a genuine issue of material fact.[25]  Swiftships maintains that summary judgment is warranted based upon Parfait's deposition testimony, which shows that Parfait was familiar with the layout of the area where he fell, that he saw Guillory working in one of the open hatches during his pre-inspection, and that he saw Guillory working in the hatch while walking towards him and just a couple of feet before he fell.[26]

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law."[27]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a material fact issue is one that "might affect the outcome of the suit under the governing law."[28]  "All evidence

---

Doc. 64 at pp. 13-16.  This argument, however, is misplaced.  As Parfait recognizes in its Opposition brief, it is only a vessel owner that owes a duty to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas under the active control of the vessel.   *See*, R. Doc. 64 at pp. 9-10 (quoting *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 167, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)) (internal quotation marks omitted).  Parfait has not alleged that Swiftships is the owner of the vessel at issue.  *See*, *generally*, R. Doc. 1.  As such, the "active control" duty does not apply to Swiftships.

[24] R. Doc. 70.
[25] *Id*. at pp. 4-8.
[26] *Id*. at p. 5.
[27] Fed. R. Civ. P. 56(a).
[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor."[29]   Nonetheless, "A party opposing summary judgment 'must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'"[30]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[31]

## III.   ANALYSIS

At the outset, the Court notes that the Complaint is silent as to the basis for this Court's subject matter jurisdiction over Parfait's claims against Swiftships.[32] The Complaint states only that, "Plaintiff brings these claims pursuant to 33 USC 933(f) of the Longshore and Harbor Workers' Act and the General Maritime Law and files said claims pursuant to the Savings to Suitor's Clause of the United States Constitution."[33]   Parfait, however, alleges that the injuries and damages that he suffered "were caused by the negligence and/or fault of Defendant, Swiftships, LLC" in, among other things, "Failure to warn of the open hatch."[34]  The parties seem to agree that Parfait's claims fall under the Court's general maritime tort jurisdiction.[35]

---

[29] *Johnson v. Cooper T. Smith Stevedoring Company, Inc.*, 74 F.4th 268, 272 (5th Cir. 2023) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328-29 (5th Cir. 2017)) (internal quotation marks omitted).
[30] *Johnson*, 74 F.4th at 272 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).
[31] *Little*, 37 F.3d at 1075.   *See*, *Johnson*, 74 F.4th at 272 (quoting *Little*, *supra*) ("'[C]onclusory allegations' and 'unsubstantiated assertions' will not suffice.").
[32] *See*, *generally*, R. Doc. 1.
[33] R. Doc. 1 at ¶ 2.
[34] *Id*. at ¶ 9.
[35] *See*, R. Doc. 51-1 at pp. 7-11; R. Doc. 64 at pp. 8-10.

Under 28 U.S.C. § 1333, federal courts have original jurisdiction over "Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[36]  "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."[37]  The locality test assesses "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[38]  The connection test requires two showings: (1) that the incident has a potentially disruptive impact on maritime commerce; and (2) that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.[39]  For the reasons stated by Swiftships in its Motion,[40] the Court agrees with the parties that both the locality and connection tests are met in this case and that the Court has maritime jurisdiction over Parfait's claims.

Moreover, the Fifth Circuit has made clear that, "An LHWCA plaintiff may [] sue nonvessel third parties under general maritime law tort principles."[41]  Here, Parfait asserts a claim of negligence against Swiftships, a nonvessel third party,

---

[36] 28 U.S.C. § 1333(1).

[37] *Venable v. Louisiana Workers' Compensation Corp.*, 740 F.3d 937, 944 (5th Cir. 2013) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)) (internal quotation marks omitted).

[38] *Venable*, 740 F.3d at 944 (quoting *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043) (internal quotation marks omitted).

[39] *Venable*, 740 F.3d at 944 (quoting *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043).

[40] R. Doc. 51-1 at pp. 9-11.

[41] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387 (5th Cir. 2003) (citing *Melerine v. Avondale Shipyards*, 659 F.2d 706, 708 (5th Cir. 1981), *overruled in part on other grounds by Acosta v. Hensel Phelps Construction Co.*, 909 F.3d 723 (5th Cir. 2018); *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 977 (5th Cir. 1978)).

under general maritime law.[42]  In their briefing, the parties agree that, "'[N]egligence is an actionable wrong under general maritime law,' and the elements of that tort are 'essentially the same as land-based negligence under the common law.'"[43]  The parties further agree that, "To state a claim for relief under maritime law, the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."[44]

In the instant Motion, Swiftships argues that it did not have a duty to warn Parfait of the open hatch he fell into because it was an open and obvious condition. The determination of the tortfeasor's duty is a question of law.[45]  As recognized by both Parfait and Swiftships, "Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances."[46]  As recognized by the Fifth Circuit, "the determination of whether a party owes a duty to another depends on a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party."[47]  Further, "Duty 'may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct.'"[48]  "Thus, if the injuries suffered

---

[42] R. Doc. 1 at ¶¶ 2 & 9.

[43] *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005)).

[44] *Great Lakes*, 624 F.3d at 211 (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)) (internal quotation marks omitted).  *See,* R. Doc. 51-1 at pp. 11-12; R. Doc. 64 at p. 8.

[45] *Great Lakes*, 624 F.3d at 211 (quoting *In re Signal Int'l*, 579 F.3d 478, 490 (5th Cir. 2009)).

[46] *Great Lakes*, 624 F.3d at 211 (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

[47] *Canal Barge Co.*, 220 F.3d at 377 (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)).

[48] *Great Lakes*, 624 F.3d at 211 (quoting *Consol. Aluminum*, 833 F.2d at 67).

allegedly as a result of the [defendants'] negligent [actions] were not foreseeable, the [defendants] owed no duty to the [plaintiffs] and are not liable as a matter of law."[49]

Although Swiftships readily admits that it is not the owner of the vessel on which Parfait's accident occurred,[50] Swiftships seems to assert that it owed Parfait the same duty owed by a vessel owner, which "has no duty to warn a person lawfully aboard the vessel of an open and obvious condition."[51]  In making that argument, however, Swiftships relies exclusively upon cases addressing the three duties owed by vessel owners to injured longshoremen,[52] as set forth by the Supreme Court in *Scindia Seam Nav. Co., Ltd. v. De Los Santos*.[53]   Under 33 U.S.C. § 905(b) vessel owners owe three narrow duties to longshoremen: (1) a turnover duty; (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel; and (3) a duty to intervene.[54]  It is well settled in this Circuit that, "a vessel owner need not warn of 'dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering.'"[55]

---

[49] *Great Lakes*, 624 F.3d at 211.

[50] R. Doc. 51-1 at p. 11 ("because Mr. Parfait is a longshoreman and because Swiftships is neither the owner of the vessel on which Mr. Parfait was allegedly injured nor . . ."); R. Doc. 51-1 at p. 12 ("Although Swiftships is not the owner of the vessel on which the incident occurred . . ."); R. Doc. 70 at pp. 2-3 ("Mr. Parfait's argument fails because 33 U.S.C. § 905(b) has no applicability to an action against a non-vessel third party such as Swiftships.").

[51] R. Doc. 51-1 at pp. 11-13 (citing *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 357 (5th Cir. 2016); *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 105, 114 S.Ct. 2057, 2067, 129 L.Ed.2d 78 (1994); *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1246 (5th Cir. 1997); *Carroll v. Carnival Corporation*, 955 F.3d 1260, 1264 (11th Cir. 2020)).

[52] *See*, note 50, *supra*.

[53] 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).  *See*, *Manson Gulf, LLC v. Modern American Recycling Service, Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (quoting *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008)) (discussing the three narrow duties owed by shipowners under *Scindia*, *supra*).

[54] *Manson Gulf*, 878 F.3d at 134 (quoting *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008)) (internal quotation marks omitted).

[55] *Manson Gulf*, 878 F.3d at 134 (quoting *Kirksey*, 535 F.3d at 391).

Here, Swiftships argues that it had no duty to warn Parfait of the open hatch into which he fell because the condition was "open and obvious." Swiftships, however, fails to cite any legal authority indicating that the exception applicable to a vessel owner's duty to warn of hidden or latent dangers also applies to non-vessel owners like Swiftships. Curiously, in addressing one of the arguments made in Parfait's Opposition brief, Swiftships recognizes in its Reply brief that the *Scindia* duties do not apply in this case because it was not the owner of the vessel on which Parfait was working.[56] Swiftships further contends that its reference to *Scindia* was only by analogy, that, "Swiftships was not arguing that a vessel owner's *Scindia* duties were applicable to this case," and that principles of general maritime law negligence apply.[57] Swiftships, however, offers no other explanation for why it seeks to apply *Scindia* and its progeny in arguing that it had no duty to warn Parfait of the open hatch. Swiftships fails to cite any legal authority in its Reply brief to support its position that a non-vessel owner has no duty to warn of an open and obvious condition.[58]

In *Couch v. Cro-Marine Transport, Inc.,* the Fifth Circuit rejected a similar attempt by a defendant-stevedore company to argue that "the duty a loading stevedore owes a discharging longshoreman is equivalent to the duty a shipowner owes a longshoreman under *Scindia*."[59] The stevedore company in that case argued

---

[56] R. Doc. 70 at pp. 1-4.
[57] *Id.* at p. 4.
[58] *See, generally,* R. Doc. 70.
[59] *Couch c. Cro-Marine Transport, Inc.*, 44 F.3d 319, 324-25 (5th Cir. 1995) (citing *Scindia*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)).

that it could not be liable under *Scindia* because the condition at issue constituted an open and obvious condition and, therefore, it had no duty to warn of hidden defects.[60] While recognizing that *Scindia* does hold that a vessel's duty does not extend to open and obvious conditions, the Fifth Circuit held that the district court was correct in refusing to apply *Scindia* based upon "crucial differences between the position of the vessel owner in relation to the discharging longshoremen and the position of the loading stevedore in relation to the discharging longshoremen."[61]  The Fifth Circuit concluded that, "We are not persuaded by NOSC's contention that *Scindia*'s trilogy of duties should apply to the loading stevedore/discharging stevedore or longshoreman relationship.  A review of the *Scindia* duties reinforces our conclusion that the *Scindia* duties were formulated specifically to govern section 905(b) suits between vessel owners and injured longshoremen."[62]

    This Court similarly rejects Swiftships' attempt to apply *Scindia,* whether directly or by analogy, to a case involving a maritime tort suit brought by an injured longshoreman against a third party, non-vessel owner.  Swiftships argues that it is entitled to summary judgment on the sole basis that Parfait cannot establish an essential element of his maritime negligence claim – that Swiftships owed him a duty to warn of the open hatch – because the open hatch was an open and obvious condition.[63]  Even assuming, without deciding, that the open hatch was an open and obvious condition, Swiftships has failed to direct the Court to any legal authority

---

[60] *Couch*, 44 F.3d at 324.
[61] *Couch*, 44 F.3d at 324 (citing *Scindia*, 451 U.S. at 172-74, 101 S.Ct. at 1625).
[62] *Couch*, 44 F.3d at 326.
[63] R. Doc. 51-1 a tp. 24.

supporting its position that it, a third party, non-vessel owner, had no duty to warn Parfait of an open and obvious condition.   Because Swiftships offers no other argument in support of summary judgment, the Court finds that Swiftships has failed to carry its burden of proving under Fed. R. Civ. P. 56 that it is entitled to judgment as a matter of law on the basis that Parfait is unable to establish that Swiftships had a duty to warn him of the open hatch.   Under general maritime law, Swiftships owed Parfait a duty of ordinary care under the circumstances."[64]   Swiftships has not argued that Parfait is unable to show that Swiftships owed him this duty.

The Court further finds that a genuine issue of material fact exists as to whether Swiftships' duty to exercise ordinary care under the circumstances included a duty to warn Parfait of the open hatch.   The parties do not address whether the injuries suffered by Parfait as a result of Swiftships' alleged negligence in failing to warn Parfait of the open hatch were foreseeable.[65]   Moreover, and importantly, the deposition testimony before the Court raises a disputed factual question regarding whether Guillory was blocking Parfait's view of the open hatch into which he fell. Parfait testified during his deposition that on the morning of his accident, he conducted a 30-minute pre-inspection of the area where his accident occurred to make

---

[64] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

[65] *See, Great Lakes*, 624 F.3d at 211 (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)) ("The determination of the existence and scope of a duty 'involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party.   Duty 'may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct.' Thus, if the injuries suffered allegedly as a result of the Limitation Petitioners' negligent dredging were not foreseeable, the Limitation Petitioners owed no duty to the Claimants and are not liable as a matter of law.") (internal citations omitted).

sure there were no hazards.[66]  Parfait testified that he knew there were two hatches in the area where his accident occurred, one on the starboard side and one on the port side of the vessel, but that he did not see the open hatch on the port side into which he fell.[67]  Parfait further testified that during his pre-inspection of the area, only the starboard hatch was open and he saw Guillory working in and around the open hatch.[68]  Parfait testified that he had visual contact and a direct line of sight with Guillory right before he fell into the open hatch on the port (left) side, but that he did not see that the hatch was open.[69]

Guillory testified that at the time of Parfait's accident, he was "bent over at the time, so my body was blocking, blocking the hatch and the right hatch . . .,"[70] he was "in Hatch A,"[71] and he "was sitting in Hatch A."[72]  Guillory was then asked, "So where you were working, would you have been blocking Mr. Parfait's view of Hatch A?," to which he replied, "I was probably blocking the whole, the whole hole right there."[73] Counsel then asked Guillory, "So blocking somebody's entire view of the whole hole?" to which Guillory responded, "Blocking the hole in general my body, I mean."[74]  In another follow-up question, counsel asked "As such, though, that would then obscure somebody's view of the hole, correct?" and Guillory stated, "Unless they tried to walk

---

[66] R. Doc. 51-2 at pp. 33-34.
[67] *Id*. at pp. 40-42 & 69-71.
[68] R. Doc. 51-2 at pp. 44-45, 50-51, 65-69.
[69] *Id*. at pp. 69-70.
[70] R. Doc. 64-2 at p. 11.
[71] *Id*. at p. 12.
[72] *Id*.
[73] *Id*. at p. 13.
[74] *Id*.

over the top of me."[75]  It is unclear to the Court whether Guillory testified that his body was blocking Parfait's view of the starboard hatch, which Parfait had seen open during his pre-inspection of the area, the port side hatch which he fell into, or if Guillory testified that his body was blocking Parfait's view of both open hatches. Notably, Swiftships does not address Guillory's testimony in its Reply brief,[76] despite the fact that Parfait pointed out this line of questioning in his Opposition brief.[77]  This ambiguity in the testimony is sufficient to raise a genuine dispute regarding whether Swiftships, through Guillory, had a duty to warn Parfait of the open hatch into which he fell.

Additionally, Parfait testified that when he saw Guillory right before he fell into the open hatch that Guillory's back was to him.[78]  Specifically, counsel asked Parfait, "Meaning his torso is up above the hatch, he has his legs in the hatch on the right, and his back is facing you as you're walking towards him?" to which Parfait responded, "Yes, sir." [79]   Guillory's testimony, however, contradicts Parfait's testimony.  Guillory testified that he was sitting in the hatch on the right.[80]  Counsel asked him, "And again, the mechanics of what you recall is that you were in front of Hatch A and you believe that Mr. Parfait stumbled over you and fell into Hatch A?[81] Guillory responded that, "I can't really tell you what he did behind me.  My head was inside my work area basically looking down.  I just know that he came to *my right*

---

[75] *Id.*
[76] *See, generally*, R. Doc. 70.
[77] R. Doc. 64 at p. 11 (*citing* R. Doc. 64-2 at pp. 12-13).
[78] R. Doc. 51-2 at pp. 68-69.
[79] *Id*. at p. 69.
[80] R. Doc. 64-2 at p. 12.
[81] R. Doc. 64-2 at p. 12.

and fell *to my right* and fell forward."[82]  Swiftships does not address the apparent conflict between this testimony, which further supports the Court's conclusion that a genuine dispute exists as to whether Swiftships had a duty to warn Parfait of the open hatch into which he fell.

Viewing the evidence before the Court in the light most favorable to Parfait, as this Court is bound to do, the Court finds that a genuine issue of material fact precludes summary judgment at this time.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment[83] is **DENIED.**

New Orleans, Louisiana, September 3, 2024.

**WENDY B. VITTER**
**United States District Judge**

---

[82] *Id.* (emphasis added)
[83] R. Doc. 51.