UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLAINE PARFAIT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-2152** |
| **SWIFTSHIPS, LLC** | **SECTION: D (3)** |

## ORDER AND REASONS

Before the Court is a Motion For Summary Judgment, filed by third-party plaintiff, Swiftships, LLC ("Swiftships").[1] Third-party defendant, Coating Services, Inc. ("CSI"), opposes the Motion,[2] and Swiftships has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND [4]

This is a maritime personal injury case wherein Blaine Parfait alleges that he was injured on or about November 20, 2020, when he fell into an open hatch while working aboard a vessel during his employment with CSI as a painter/foreman.[5] Parfait sued Swiftships, asserting that his injuries were caused by the negligence of Swiftships and its employees for, among other things, failing to warn him of the open hatch. The Court allowed Swiftships to file a third-party complaint against CSI for

---

[1] R. Doc. 65.
[2] R. Doc. 68.
[3] R. Doc. 69.
[4] The facts and procedural history of this case were set forth in great detail in the Court's September 3, 2024 Order and Reasons (R. Doc. 86) and, for the sake of brevity, will not be repeated here.
[5] R. Doc. 1 at ¶ 4.

defense and indemnity based upon an indemnity provision contained in a Purchase Order in effect between CSI and Swiftships.[6]

In the instant Motion, Swiftships asserts that it is entitled to summary judgment as a matter of law on its third-party claims against CSI and that CSI should be found contractually obligated to defend, indemnity, and hold Swiftships harmless from and against Parfait's claims in this matter.[7] Swiftships contends that at the time of Parfait's alleged injury, CSI's work for Swiftships was governed by Swiftships' Purchase Order No. PO-0017225-1, which requires CSI to defend, indemnity, and hold Swiftships harmless against claims of bodily or personal injury incurred as a result of several categories of CSI's work.[8] According to Swiftships, the indemnification provision states, in pertinent part, that CSI shall defend and indemnify Swiftships "from and against any and all" liability and losses incurred as a result of "personal injury or bodily injury . . . sustained by any third parties arising in any manner in connection with the activities carried out by Supplier [CSI] pursuant to this Purchase Order."[9] Swiftships asserts that the Purchase Order also contains a choice-of-law provision, calling for the application of Virginia law, and that the Supreme Court recently upheld the enforceability of choice-of-law provisions in maritime contracts.[10] Swiftships argues that indemnity provisions are

---

[6] *See* R. Docs. 16, 18, & 20.
[7] R. Doc. 65.
[8] R. Doc. 65-1 at pp. 1 & 2–3.
[9] *Id*. at pp. 2–3 (*quoting* R. Doc. 65-2 at p. 4, ¶¶ 8.0 & 8.1) (internal quotation marks omitted). CSI does not dispute that the Purchase Order contains that language. *See* R. Doc. 68 at p. 3.
[10] R. Doc. 65-1. at p. 3 (citing *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 144 S.Ct. 637, 217 L.Ed.2d 401 (2024)).

presumptively valid under Virginia law,[11] that it is entitled to defense and indemnity from CSI under the plain language of the indemnification provision because Parfait was a third party to the Purchase Agreement and his personal injury claim arose out of the services CSI was contracted to perform.[12] Swiftships further asserts that a Virginia statute declaring that certain indemnification provisions in construction contracts are void does not apply in this case.[13]

CSI opposes the Motion, arguing that there is no contract between the parties because CSI never signed the Purchase Order.[14] Nonetheless, CSI further asserts that under either maritime law or Virginia law, a contractual indemnification provision that seeks to indemnify a party for its own negligence must be clear and explicit.[15] CSI argues that the indemnification provision in the Purchase Order does not contain language that clearly and unequivocally provides that CSI will defend and indemnify Swiftships for Swiftships' own fault or negligent actions.[16] Finally, CSI argues that the indemnity provision is not applicable because it only requires defense and indemnity for injuries sustained by a "third party," a term that is not defined in the Purchase Order.[17] CSI asserts that the term "third party" contemplates other contractors or the agents or employees of other contractors who are not parties to the Purchase Order, and does not include CSI and its agents and

---

[11] R. Doc. 65-1 at pp. 3–5.
[12] *Id.* at pp. 5–7.
[13] *Id.* at pp. 8–11 (*citing* Va. Code Ann. § 11-4.1).
[14] R. Doc. 68 at pp. 1 & 3–4.
[15] *Id.* at pp. 1 & 4–9.
[16] *Id.* at pp. 6, 7, & 8–9.
[17] *Id.* at p. 9.

employees since CSI is a party to the Purchase Order.[18] CSI points out that entities like CSI and Swiftships can only act through their agents and employees, and that the indemnity provision refers to and uses the term "employees" twice, indicating that the term "third parties" does not include employees.[19] CSI further asserts that, at the very least, the undefined term "third parties" is ambiguous, capable of different interpretations, and must be construed against Swiftships, the drafter of the Purchase Order, under Virginia law.[20]

In response, Swiftships argues that the Court should reject CSI's argument that it never agreed to be bound by the terms of the Purchase Order because the Purchase Order provides that the provision of services by CSI to Swiftships or the acceptance of payment by CSI constitutes an unqualified acceptance by CSI of the Purchase Order's terms and conditions regardless of whether CSI ever signed it.[21] Swiftships asserts that because Parfait had been working on the vessel for about six months before his alleged accident, it is clear that CSI provided services to Swiftships and accepted the terms and conditions of the Purchase Order.[22] Swiftships further asserts that CSI fails to cite any Virginia case law to support its position that an indemnity provision must contain explicit language regarding indemnification for an indemnitee's own negligence.[23] With respect to CSI's argument that Parfait is not a

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at pp. 9–10.
[21] R. Doc. 69 at pp. 1–2 (*citing* R. Doc. 65-2 at p. 2, § 1.0).
[22] R. Doc. 69 at p. 2.
[23] *Id.* at pp. 2–4.

"third party" to the Purchase Order, Swiftships relies upon the arguments made in its Motion.[24]

## II.  LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[25] A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[26] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[27] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[28] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[29] In resolving a motion for summary judgment, the Court must review the facts

---

[24] *Id.* at p. 4 (*citing* R. Doc. 65-1 at pp. 5–6).
[25] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[26] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[27] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[29] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[30]

### III. ANALYSIS

#### A. CSI Accepted the Terms and Conditions of Purchase Order Number PO-0017225-1.

Swiftships submitted a copy of Purchase Order Number PO-0017225-1 with its Motion, the first page of which provides that, "BUYER AND SUPPLIER HAVE SIGNED THIS PURCHASE ORDER AND AGREE TO BE BOUND BY THE REQUIREMENTS AND TERMS SET FORTH HEREIN AS A BINDING AGREEMENT AS EVIDENCED BY THE FOLLOWING AUTHORIZED SIGNATORIES: . . . ."[31] While the Purchase Order has the electronic signature of a "Purchasing Agent" for Swiftships, there is no signature on behalf of CSI.[32] While it does not dispute that the Purchase Order contains the language cited by Swiftships,[33] CSI argues that it did not agree to be bound by the Purchase Order's terms and conditions because it did not sign the Purchase Order. That position ignores the clear language of the Purchase Order. The second page of the Purchase Order provides that, "'Buyer' means the party issuing this Purchase Order" and "'Supplier' means the party to whom this Purchase Order is issued."[34] Paragraph 1.0, which sets forth the "Terms" of the Purchase Order, provides that, "THIS PURCHASE ORDER,

---

[30] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[31] R. Doc. 65-2 at p. 1.
[32] *Id.*
[33] *See* R. Doc. 68 at p. 3.
[34] R. Doc. 65-2 at p. 2.

WHICH REPRESENTS THE ENTIRE AGREEMENT BETWEEN BUYER AND SUPPLIER, CONSTITUTES AN OFFER FROM BUYER TO SUPPLIER AND CONSTITUTES A BINDING CONTRACT BETWEEN BUYER AND SUPPLIER BASED ON THE TERMS AND CONDITIONS SET FORTH HEREIN UPON ACCEPTANCE BY SUPPLIER IN WRITING."[35]

> Paragraph 1.0, however, further specifies that:
>
> IF FOR ANY REASON SUPPLIER SHOULD FAIL TO RENDER ACCEPTANCE OF THIS PURCHASE ORDER IN WRITING . . . THE FURNISHING OF ANY SERVICE HEREUNDER BY SUPPLIER TO BUYER OR THE ACCEPTANCE OF ANY PAYMENT BY SUPPLIER HEREUNDER OR ANY OTHER CONDUCT BY SUPPLIER WHICH RECOGNIZES THE EVIDENCE OF A BINDING CONTRACT PERTAINING TO THIS PURCHASE ORDER AND SHALL CONSTITUTE AN UNQUALIFIED ACCEPTANCE BY SUPPLIER OF THIS PURCHASE ORDER AS A BINDING CONTRACT AND ALL OF THE TERMS AND CONDITIONS SET FORTH IN THIS PURCHASE ORDER.[36]

As Swiftships points out, Parfait has alleged that he was employed by CSI as a painter/foreman and was working for CSI aboard a vessel at the time of his alleged injury on November 20, 2020.[37] In its Answer and Defenses to Swiftships' Third-Party Complaint, CSI admits that Parfait was an employee of CSI.[38] Curiously, CSI's Opposition brief is devoid of any recognition that Parfait was a CSI employee at the time of his injury, or that Parfait was performing work for CSI at that time.[39] CSI, however, clearly implies that Parfait was a CSI employee at the time of his injury by

---

[35] R. Doc. 65-2 at p. 2, ¶ 1.0.
[36] *Id.*
[37] R. Doc. 69 at p. 2. *See* R. Doc. 1 at ¶¶ 4–8.
[38] R. Doc. 23 at ¶ II.
[39] *See, generally*, R. Doc. 68.

arguing that the indemnity provision does not apply because "the term 'third parties' contemplates someone other than the parties to the Purchase Order and their agents *and employees*."[40]  Because CSI does not dispute that Parfait was a CSI employee performing work for CSI at the time of his injury, there appears to be no dispute that CSI was furnishing services to Swiftships pursuant to the Purchase Order at the time of Parfait's injury.  According to the terms of the Purchase Order, in the event that CSI (the "Supplier") fails to render acceptance of the Purchase Order in writing, "the furnishing of any service hereunder by supplier to buyer . . . shall constitute an unqualified acceptance by supplier of this purchase order as a binding contract and all of the terms and conditions set forth in this purchase order."[41]  The Court therefore rejects CSI's argument that there is no binding agreement between the parties and finds that CSI is bound by the "Purchase Order General Terms and Conditions" set forth in Purchase Order No. PO-0017225-1.[42]

### B. There is No Dispute That the Choice-Of-Law Provision in the Purchase Order is Valid and Enforceable.

As Swiftships points out, the Purchase Order contains a choice-of-law provision which states that if the Purchase Order is issued from within the United States, "this Purchase Order shall be interpreted and enforced in accordance with the laws of the commonwealth of Virginia, United States of America, in all respects, including statutes of limitations, but specifically excluding any conflict of law provisions

---

[40] R. Doc. 68 at p. 10 (emphasis added).
[41] R. Doc. 65-2 at p. 2, ¶ 1.0.
[42] *Id.* at p. 2.

contained therein."[43]   While neither party has provided information regarding whether the Purchase Order was issued from within the United States, both parties seem to agree that Virginia law applies to the Purchase Order.[44]   Additionally, CSI does not contest the existence or validity of the choice-of-law provision in its Opposition brief.[45]   CSI likewise does not contest Swiftships' assertions that the Purchase Order constitutes a maritime contract and that the Supreme Court has concluded that, "[c]hoice-of-law provisions in maritime contracts are presumptively enforceable."[46]   Because CSI does not challenge the validity or enforceability of the choice-of-law provision in the Purchase Order, the Court will apply Virginia law to the instant dispute.

### C. The Indemnity Provision is Enforceable Under Virginia Law.

CSI challenges the validity of the indemnity provision under both maritime law and Virginia law, claiming that an indemnification clause that seeks to cover a party's own negligence must be clear and explicit.[47]   Because the Court has determined that Virginia law applies to the Purchase Order, the Court rejects CSI's argument that the indemnity provision is not enforceable under maritime law.[48]   In support of its position that the indemnity provision is not enforceable under Virginia law because it does not clearly and explicitly establish that CSI agreed to indemnify Swiftships against its own negligence, CSI cites a 1955 case from the Eastern District

---

[43] *Id.* at p. 6, ¶ 16.0.
[44] R. Doc. 65-1 at p. 3; R. Doc. 68 at pp. 4–5 & 7–9.
[45] *See, generally*, R. Doc. 68.
[46] R. Doc. 65-1 at p. 3 (citing *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70, 144 S.Ct. 637, 342, 217 L.Ed.2d 401 (2024)).  *See, generally*, R. Doc. 68.
[47] R. Doc. 68 at pp. 4–9.
[48] *Id.* at pp. 5–7.

of Virginia which held that, "the Court should be most reluctant to construe a contract indemnifying a party against its own negligence unless the terms are clear and explicit."[49] That same court in 1971 held that, "The majority view in Virginia would appear to suggest that 'the Court should be most reluctant to construe a contract indemnifying a party against its own negligence *unless the terms are clear and explicit.*"[50] Notably, neither that court nor CSI cite any other cases that support this position, and this Court has found none.

Nonetheless, the Court finds that the terms of the indemnity provision at issue are explicit. "Under Virginia law, indemnity contracts are construed under the general rules that govern the interpretation of any other type of contract."[51] Further, under Virginia law, "It is the duty of the court to construe the contract made between the parties, not to make a contract for them, and 'The polestar for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used.*'"[52] Here, the indemnity provision requires CSI to "defend, indemnify and hold harmless" Swiftships "from and against *any and all* liability, damages, losses, claims" that "relate to, arise out of, or are asserted or incurred as a result of . . . personal injury or bodily injury . . . sustained by any third parties *arising in any*

---

[49] *Newport News Shipbuilding & Dry Doc Co.*, 130 F.Supp. 159, 165 (E.D. Va. 1955), *aff'd* 226 F.2d 137 (4th Cir. 1955) (citing *Southern Bell Telephone & Telegraph Co. v. Mayor and Bd. of Aldermen of city of Meridian, Miss.*, 74 F.2d 983 (5th Cir. 1935)).
[50] *Daniel Const. Co. v. Welch Contracting Corp.*, 335 F.Supp. 303, 305 (E.D. Va. 1971) (quoting *Newport News*, 130 F.Supp. 159) (internal quotation marks omitted) (emphasis in original).
[51] *Carpenter Insulation & Coatings v. Statewide Sheet Metal & Roofing*, 937 F.2d 602 (4th Cir. 1991) (citing *Seaboard Air Line R.R. Co. v. Richmond–Petersburg Turnpike Authority*, 121 S.E.2d 499, 503 (Va. 1961).
[52] *Seaboard Air Line R.R. Co.*, 121 S.E.2d at 503 (quoting *Ames v. American Nat'l Bank of Portsmouth*, 176 S.E.204, 216 (Va. 1934)) (emphasis in original).

*manner* in connection with the activities carried out by [CSI] pursuant to this Purchase Order."[53] The ordinary meaning of the phrases "any and all" and "arising in any manner" are inclusive, and the indemnity provision does not contain an exception for losses or injuries that may result from Swiftships' negligence.[54] The Court therefore rejects CSI's argument that that the indemnity provision is not enforceable under Virginia law because it does not clearly and explicitly establish that CSI agreed to indemnify Swiftships against its own negligence.

While the indemnity provision is admittedly broad and favorable to Swiftships, it does not violate Virginia public policy, nor does the Court find that this fact, alone, makes the language either unclear or vague. The Virginia Supreme Court has consistently held that a contractual provision in which a party indemnifies itself against its own negligence, which was negotiated at arm's length with a willing indemnitor, is enforceable and is not void as against public policy.[55] The Virginia Supreme Court has also held that, "A party to an indemnification agreement is entitled to enforce the agreement according to its agreed terms."[56] In *Estes Express Lines, Inc., et al. v. Chopper Express, Inc.,* the Virginia Supreme Court enforced an

---

[53] R. Doc. 65-2 at p. 4, ¶ 8.1.
[54] *Carpenter Insulation & Coatings v. Statewide Sheet Metal & Roofing*, 937 F.2d 602 (4th Cir. 1991).
[55] *Estes Exp. Lines, Inc. v. Chopper Exp., Inc.*, 641 S.E.2d 476, 478–80 (Va. 2007). *See W.R. Hall, Inc. v. Hampton Roads Sanitation Dist.*, 641 S.E.2d 472, 475 (Va. 2007) ("we reject W.R. Hall's assertion that a contractual indemnification provision is void as against public policy insofar as it indemnifies a party against liability for future acts of negligence causing personal injury."); *Appalachian Power Co. v. Sanders*, 349 S.E.2d 101, 106 (Va. 1986) (noting that, "A private property owner, including a common carrier while acting as such, may lawfully contract to indemnify itself against its own negligence without offending public policy, *C. and O. Ry. Co. v. Telephone Co.*, 224 S.E.2d 317 (Va. 1976), and the Chamber does not challenge the indemnity contract on public-policy grounds.").
[56] *Farmers Ins. Exchange v. Enterprise Leasing Co.*, 708 S.E.2d 852, 856 (Va. 2011) (citing *Safeway, Inc. v. DPI Midatlantic, Inc.*, 619 S.E.2d 76, 79 (Va. 2005)). *See Collier v. Land & Sea Restaurant, Co., LLC*, 972 F. Supp. 2d 870, 877 (W.D. Va. 2013) (citing *Estes* and declaring that, "When such an indemnification provision exists, it should be enforced.").

indemnity provision that is very similar to the indemnity provision in this case, which provided that the defendant agreed to indemnify, defend and hold the plaintiff harmless from "Any and all loss, cost, claim, expense, cause of action, loss of use and liability by reason of injury (including death) to persons or damage to property arising out of the use, operation, ownership, maintenance or control of a [leased] Vehicle whether covered by insurance or not . . . ."[57] As in the *Estes* case, this Court finds that the indemnity provision in the Purchase Order is enforceable under Virginia law.

### D. The Indemnity Clause Contains an Ambiguity Precluding Summary Judgment.

Having found that the indemnity provision is enforceable, the Court must now determine whether it contains an ambiguity that would preclude summary judgment. The parties disagree regarding whether Parfait is a "third party" within the meaning of the indemnity provision contained in the Purchase Order. While Swiftships argues that there is no dispute that it is entitled to indemnification because Parfait is a third party to the Purchase Order and he was injured in connection with the services CSI was contracted to perform for Swiftships, CSI argues that Parfait is an employee of one of the parties (CSI), not a third party, and therefore Swiftships is not entitled to indemnification. CSI contends that it is "illogical" to believe that "third parties" only applies to Swiftships and CSI, but not to their agents and employees.[58]

Under Virginia law, whether a contract is ambiguous is a question of law.[59] "When an agreement is plain and unambiguous on its face, the Court will not look for

---

[57] *Estes*, 641 S.E.2d at 476–77.
[58] R. Doc. 68 at p. 9.
[59] *Eure v. Norfolk Shipbuilding & Drydock Corp. Inc.*, 561 S.E.2d 663, 667 (Va. 2002) (citing omitted).

meaning beyond the instrument itself."[60]  "However, when a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties."[61] "A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement."[62]  According to the Virginia Supreme Court, "An ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time."[63]  However, "The mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous."[64]

The Virginia Supreme Court has further instructed that, "In determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning."[65]  "No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly."[66]  "Further, the omission of a particular term from a contract is evidence that the parties intended to exclude that term."[67]  The Virginia

---

[60] *Id.* (citing *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986)).
[61] *Eure*, 561 S.E.2d at 667–68 (citing *Aetna Cas. And Sur. Co. v. Fireguard Corp.*, 455 S.E.2d 229, 232 (Va. 1995)).
[62] *Pocahontas Mining Ltd. Liability Co. v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008) (citing authority).
[63] *Pocahontas Mining*, 666 S.E.2d at 531 (citing authority).  *See Eure*, 561 S.E.2d at 668 (same).
[64] *Pocahontas Mining,* 666 S.E.2d at 531 (citing authority).
[65] *Pocahontas Mining*, 666 F.E.2d at 531 (citing authority).
[66] *Id.* (citing authority).
[67] *Id.* (citing authority).

Supreme Court further explained that, "In ascertaining the parties' intention regarding specific contract provisions, we consider the document as a whole."[68] Additionally, "In determining whether a term is ambiguous, a court cannot look at the term in isolation; it must look at the term in the context of the entire contract."[69] Thus, "a contractual term is not ambiguous merely because it is subject to multiple interpretations when viewed in isolation. Rather, a contractual term is ambiguous when it is subject to multiple interpretations in view of the entire contractual context."[70] Further, "Under Virginia law, conflicting interpretations reveal an ambiguity only where they are reasonable. A 'reasonable' or 'fairly claimed' interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision."[71]

As previously discussed, the indemnity provision in the Purchase Order provides the following:

> 8.1 Supplier shall defend, indemnify and hold harmless Buyer, Buyer's customer(s) and/or higher tier customer(s) and their respective directors, officers, employees, agents from and against any and all liability, damages, losses, claims, demands, judgments, costs and expenses which relate to, arise out of, or are asserted or incurred as a result of:
> (1) Property loss or damage, personal injury or bodily injury, including death, sustained by any *third parties* arising in any manner in connection with the activities carried out by the Supplier pursuant to this Purchase Order;
> (2) the failure of Supplier to comply with any applicable laws;
> (3) the negligence or wrongful acts of Supplier or Supplier's employees, officers, directors, agents or representatives;

---

[68] *Id*. (citing authority).
[69] *James River Ins. Co. v. Doswell Truck Stop, LLC*, 827 S.E.2d 374, 376 (Va. 2019) (citing *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237 (Va. 2016)).
[70] *James River*, 827 S.E.2d at 376.
[71] *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355–56 (Va. 2019) (citations omitted).

>    (4) failure of Supplier to comply with any Buy America requirements set forth in the Purchase Order or these terms and conditions;
>    (5) any claim or threatened claim that Supplier's goods, products or services infringe on the intellectual property rights of any third party.[72]

While Swiftships argues that Parfait is a "third party" within the meaning of Paragraph 8.1(1) "because he was not one of the parties to the agreement,"[73] the language of the indemnity provision contradicts that argument. As CSI correctly points out, the Purchase Order does not define the term "third parties." [74] Additionally, as CSI points out, the word "employee" is used several times throughout the Purchase Order, including within the indemnity provision itself.[75] Both the introductory language of Paragraph 8.0 and Paragraph 8.1(3) include the word "employees," which seems to have a different meaning from the term "third parties."[76] The Court finds that Swiftships, as the party who drafted the Purchase Order, made a deliberate choice to use the term "third parties" rather than "employees" in Paragraph 8.1(1), and also chose to use the term "employees" in Paragraph 8.1(3), suggesting that the term "third parties" differs from the term "employees" and does not include employees of CSI or Swiftships.

The Court finds that the term "third parties" as used in the indemnity provision is ambiguous under Virginia law. This is because the term "third parties" is subject to two different interpretations both of which are reasonable in the context

---

[72] R. Doc. 65-2 at p. 4, ¶ 8.1 (emphasis added).
[73] R. Doc. 65-1 at p. 5.
[74] *See, generally*, R. Doc. 65-2.
[75] *See* R. Doc. 65-2 at p. 4, ¶¶ 8.1 & 8.1(3); p. 6, ¶¶ 13.1 & 13.2; p. 7,¶¶ 18.0 & 19.0; pp. 8–9, ¶ 23.0; p. 10, ¶¶ 28.1 & 29.4; p. 11, ¶ 31.2.
[76] Paragraph 8.1(3) states that CSI shall indemnity Swiftships from liability that arises out of "the negligence or wrongful acts of Supplier or Supplier's employees, officers, directors, agents or representatives.'" R. Doc. 65-2 at p. 4, ¶ 8.1(3).

of the entire Purchase Order.  On the one hand, the term "third parties" could be reasonably interpreted to include any party other than CSI and Swiftships, which are the only parties to the Purchase Order.  Under this interpretation, Parfait would be a "third party."  On the other hand, however, the term "third parties" could be reasonably interpreted to exclude the employees of CSI and Swiftships, since the Purchase Order clearly draws a distinction between "third parties" and "employees."  Under this interpretation, Parfait, as a CSI employee, would not be a "third party."  The Virginia Supreme Court has consistently held that, "[i]n the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement."[77]  Because Swiftships prepared the Purchase Order,[78] the Court must construe the ambiguity in the indemnity provision against Swiftships and in favor of CSI for purposes of the instant Motion for Summary Judgment.  Further, since the Court has determined that the term "third parties" as used in the Purchase Order is ambiguous, the Court finds it proper for the jury to determine the meaning of the term "third parties."[79]  Accordingly, Swiftships has failed to carry its burden of proving that it is entitled to summary judgment on the issue of indemnification.

---

[77] *Doctors Co. v. Women's Healthcare Associates, Inc.*, 740 S.E.2d 523, 526 (Va. 2013) (citing authority) (quotation and internal quotation marks omitted).

[78] The Court notes that the Purchase Order is on Swiftships' letterhead (R. Doc. 65-2) and that Swiftships refers to the Purchase Order in its pleadings as "Swiftships' Purchase Order No. PO-0017225-1." *See* R. Doc. 65 at p. 1 & R. Doc. 65-1 at pp. 2, 3, 5, & 6.  Additionally, the Purchase Order defines "Buyer" as "the party issuing this Purchase Order" (R. Doc. 65-2 at p. 2), and Swiftships refers to itself in its Motion as the "Buyer."  R. Doc. 65-1 at pp. 2 & 6.

[79] *See Online Res. Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. 2013) (citing *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 106 S.E.2d 595, 597 (Va. 1959)) ("Additionally, to the extent that the contractual provisions are ambiguous, it is proper to submit the question to the jury for consideration.").

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion For Summary Judgment, filed by third-party plaintiff, Swiftships, LLC,[80] is **DENIED.**

New Orleans, Louisiana, February 20, 2025.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[80] R. Doc. 65.